**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MELVIN TOWNSEND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 07 C 565 |
| v. ) | |
| ) | Magistrate Judge Morton Denlow |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's motion for judgment on the pleadings seeking to reverse the final decision of the Commissioner of Social Security. Plaintiff, Melvin Townsend ("Claimant"), challenges the decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), claiming that his denial of Claimant's request for Social Security Disability Insurance Benefits ("DIB") should be reversed or remanded because the Administrative Law Judge ("ALJ"): (1) misidentified Claimant's medical condition; (2) improperly rejected the opinion of Claimant's treating physician in favor of the opinion of the medical expert ("ME"); (3) improperly rejected Claimant's testimony as not credible; and (4) posed to the vocational expert ("VE") an incomplete hypothetical. For the reasons stated below, the Court denies Claimant's motion and affirms the ALJ's decision.

## I. BACKGROUND FACTS

### A. Procedural History

Claimant filed an application for DIB on June 18, 2003, claiming March 22, 2002 as the date of onset of the disability. R. 71-73. Claimant's alleged disability was swelling of the hands and fingers resulting in difficulty using his hands. R. 83.

The Commissioner denied Claimant's application both initially and upon reconsideration. R. 32-41. Claimant was represented by counsel at a hearing before an ALJ. Claimant, an ME, and a VE testified. R. 211-94. The ALJ found that Claimant was not disabled. R. 20-29. The Appeals Council denied Claimant's request for review of the ALJ's opinion, making the ALJ's opinion the final decision of the Commissioner. R. 4-6.[1]

### B. Hearing Testimony – April 12, 2005

#### 1. Claimant's Testimony

Claimant was thirty-eight years old at the time of the ALJ's decision. R. 27. He lives with his wife and four children. *Id.* Claimant has a high school education and spent three years in the military. R. 217-18.

Claimant reviewed his job history. His last job was a temporary stacker position in a distribution center from December 2002 to January 2003. R. 219-20, 226. The job involved stacking boxes between five and fifteen pounds. R. 224-25. He previously worked as a furnace operator, stacker, and machine operator. R. 220-21. After the temporary job as a

---

[1]The Appeals Council previously remanded the case because the transcript of the hearing could not be located, but the transcript was later found and the remand vacated. R. 7-9.

stacker ended, Claimant started a different job, but had to stop on his first day because the safety gloves did not fit his hands and he had to attend a doctor's appointment. R. 226. In March 2003, Claimant underwent a physical exam for a position with the Will County Sheriff's Office, but was not hired for unknown reasons. R. 146, 266-67.

Claimant also explained his medical history. He first received treatment for his hand in 2002 at a Veteran's Administration ("VA") facility while he was still working. R. 227. Claimant described the symptoms as pain similar to being hit in the hands. R. 228. His hands are swollen in the morning, but improve as the day continues. R. 228-29. He takes 500 milligrams of Acetaminophen for the pain approximately every other day. R. 229-30.

Claimant had hand surgery and a biopsy in July 2003. R. 228-29. Claimant was later diagnosed with sarcoidosis.[2] R. 257. He had difficulties scheduling an MRI of his hands at the VA. R. 248, 271-72.

Claimant testified that his hands have been swollen for ten or fifteen years and painful for the past three to five years, with the pain remaining the same for the past four years. R. 250-51. Claimant was working during a portion of that time. R. 254. When asked why he

---

[2]"A systemic granulomatous disease of unknown cause, especially involving the lungs with resulting interstitial fibrosis, but also involving lymph nodes, skin, liver, spleen, eyes, phalangeal bones, and parotid glands; granulomas are composed of epithelioid and multinucleated giant cells with little or no necrosis." Stedman's Medical Dictionary 363870 (27th ed.). Granulmoa is defined as "nodular inflammatory lesions, usually small or granular, firm, persistent, and containing compactly grouped modified phagocytes such as epithelioid cells, giant cells, and other macrophages." *Id.* at 168600.

3

would not be able to return to work now, if the pain is the same as when he was working, Claimant stated that the pain is now worse than when he was working. R. 255-56.

Finally, Claimant testified about the effects of his hand condition on his daily living. He stated that the hand problems did not interfere with his ability to work until a few months after his temporary position ended in January 2003. R. 227-28. He regularly drives thirty to forty-five minutes at a time. R. 231, 237. Claimant has difficulties gripping grocery bags, but is able to carry bags with light groceries from his car into his apartment. R. 233-34, 242-43. He is able to zipper his clothes. R. 234-35. He eats with a knife and fork. R. 235. He can open a doorknob, but has difficulty unscrewing lids. *Id.* Claimant can lift a cup of coffee, but cannot lift and carry a gallon of milk for more than a short distance. R. 236. He makes his bed and vacuums. R. 242. Claimant is unable to make fists. R. 229. He can write up to two pages before his handwriting becomes sloppy and he experiences pain. R. 267-68.

### 2. Barbara Bellar, M.D. – Medical Expert

The ME testified that Claimant's sarcoidosis was unusual in that it affected only his hands and not his lungs. R. 274. She described his degree of sarcoid as "extremely mild and extremely localized." *Id.* She testified that it was difficult to analyze Claimant's condition without a pathology report of the biopsy of his hand, which apparently was missing from the medical records. R. 273-75. She characterized sarcoidosis as within the category of rheumatology. R. 276.

### 3. Lee Knutson – Vocational Expert

The VE characterized Claimant's past work as light or medium physical demand and unskilled or semi-skilled. R. 287. The VE testified that someone of Claimant's age, background, and education, who is able to lift and carry up to twenty pounds occasionally, lift and carry up to ten pounds frequently, stand, walk, or sit for up to six hours in an eight-hour workday, and climb ramps or stairs occasionally, but is unable to climb ladders or ropes or crouch, could perform some of Claimant's past work and about eighty percent of all light work. R. 287-88. The VE also testified that someone with those same limitations, but who is unable to lift ten pounds even occasionally and unable to use his hands to write for long periods of time or unscrew a jar, could perform a significant range of light work, including positions such as sales and rental clerk, production inspector, checker, weigher, usher, and parking lot attendant. R. 289-93.

## C. Medical Evidence

### 1. St. James Hospital

A radiology report dated July 9, 2001 shows a fracture to Claimant's index finger. R. 148. A report dated July 18, 2001 found a "sausage shaped soft tissue swelling involving the index finger and also the ring finger, with a lesser degree of swelling involving the distal portion of the third finger" and concluded that Claimant's finger was "free of fracture and dislocation." R. 141. The report also found "[a] mild degree of degenerative osteoarthritis . . . involving multiple interphalangeal joints." *Id.*

### 2. Boulevard Medical Associates

A July 9, 2001 record shows that Claimant injured his index finger playing softball and indicates that an x-ray would be performed. R. 147. A March 27, 2003 record for a Will County Sheriff physical fitness form states that Claimant "says that he is able to work normally" and notes chronic swelling of the fingers for three years. R. 146. A July 28, 2003 record shows deformity and swelling in Claimant's fingers and mentions an upcoming biopsy. R. 145.

### 3. Veteran's Administration Chicago Health Care

Various notes from May 22, 2003, through July 21, 2003, many from a rheumatologist, indicate problems with Claimant's hands and likely sarcoidosis. R. 156-57, 159-61, 163-69, 173, 175-76. Claimant visited the VA on July 23, 2003 to be tested before undergoing a surgical biopsy of his finger. R. 151-55. On July 29, 2003, a surgical biopsy was performed which revealed evidence of possible sarcoid. R. 178-182.

An August 11, 2003 note from rheumatologist Dr. Huan J. Chang, M.D., indicates that Claimant has minimal pain that only bothers him when gripping or carrying things and no morning stiffness. R. 184. The note also indicates granulomas consistent with sarcoidosis beneath a heading reading "Path," and indicates that Claimant would be starting Prednisone. R. 185-86. A note from a day later states "biopsy proven sarcoidosis" with "possible secondary hypertrophic osteoarthropathy" and indicates that Claimant will start taking Fosamax. R. 189. September 22, 2003 and October 27, 2003 notes are similar, but show a decrease in the Prednisone dosage. R. 190-93. An MRI dated September 4, 2003 shows

tissue swelling and degenerative changes in Claimant's hands and indicates that the findings "most likely are consistent with sarcoid deposit throughout the hand." R. 195-96.

Dr. Chang, the treating physician, completed a residual functional capacity ("RFC") questionnaire dated May 16, 2005. R. 209-10. There are no records to show whether Dr. Chang examined Claimant in 2004 or 2005. Dr. Chang stated that Claimant has "sarcoid in hands" creating "difficulty with movement and pain. Unable to carry things. Stabbing pain with use in affected areas." R. 209. Dr. Chang indicated tenderness, pain, redness, soft tissue swelling, muscle weakness, limitation of motion, reduced grip strength, and muscle atrophy. *Id.* He also stated that Claimant has significant limitations with reaching, handling, or fingering, and that Claimant can grasp, turn, or twist objects three to five percent of an eight-hour workday so long as the activities are split up, can finely manipulate things with his hands for zero percent of a workday, and can reach overhead for seventy-five percent of a workday so long as he does not use his hands. R. 210.

### 4. T. Arjmand, M.D. and Sandra A. Bilinsky, M.D. – Non-Examining State Agency Physicians

Two medical consultants reviewed the Claimant's medical records and performed a RFC assessment. R. 199-206. The review indicates "sarcoidosis proven by biopsy" that is limited to Claimant's hands. R. 206. The RFC finding limits Claimant as follows: occasionally lift and carry up to twenty pounds; frequently lift and carry up to ten pounds; stand, walk, or sit for up to six hours a workday; avoid climbing ladders or ropes; avoid

crouching; and occasional climbing ramps or stairs, balancing, stooping, kneeling, or crawling. R. 200-01.

**D.     The ALJ's Decision – July 28, 2005**

The ALJ concluded that "[t]he medical evidence indicates that the claimant has impairments of residual of a rheumatoid arthritis, an impairment that is 'severe' . . . but not 'severe' enough to meet or medically equal [a listing]." R. 24. The ALJ accepted the state agency medical consultants' RFC determination as consistent with evidence in the record. R. 25. Based on the VE's testimony, the ALJ concluded that jobs exist for Claimant in the national economy, warranting a finding of not disabled. R. 28.

In reaching his conclusion, the ALJ rejected Dr. Chang's RFC findings as inconsistent with evidence in the record. R. 26. The ALJ held that Dr. Chang's RFC analysis found limitations beyond those to which Claimant testified, and was thus inconsistent with Claimant's testimony regarding his symptoms and tasks he is able to perform. *Id.*

The ALJ also gave "partial credit" to Claimant's testimony due to "inconsistencies with the objective medical evidence showing that although he has some mild functional limitation of the bilateral fingers, the limitations do not preclude the performance of at least light exertional level work." *Id.* In rejecting Claimant's testimony in part, the ALJ noted that "despite his complaints of significant rheumatoid arthritis, [Claimant] has not required inpatient hospitalization. Surgical treatment is negligible. [Claimant] has not required a comprehensive pain management clinic. Together, this does not suggest a pattern of

treatment consistent with the degree of impairment alleged." R. 26. The ALJ also referenced treatment notes showing only morning stiffness in Claimant's hands. R. 27.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A mere scintilla of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)). If the Commissioner's

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Scott,* 297 F.3d at 593. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Disability Standard**

DIB is available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365. An individual is "disabled" if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A disabled individual is eligible for DIB, however, only if he is under a disability. 42 U.S.C. § 423(a)(1)(D). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that

exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)-(f). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart,* 415 F.3d 654, 657 (7th Cir. 2005). Once the Claimant has proven he can not continue his past relevant work because of physical limitations, the ALJ carries the burden to show that other jobs which the Claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

### III. DISCUSSION

Claimant raises four issues for judicial review: (1) whether the ALJ misidentified Claimant's medical condition; (2) whether the ALJ improperly rejected the opinion of Claimant's treating physician and instead accepted the opinion of the ME; (3) whether the ALJ improperly rejected Claimant's testimony as not credible; and (4) whether the ALJ posed to the VE an incomplete hypothetical. The first and fourth issues turn on the same finding by the Court, and are therefore addressed together.

**A. Any Alleged Error by the ALJ Regarding Misidentification of Claimant's Medical Condition is Irrelevant Because the VE's Testimony was Based Upon an Appropriate Hypothetical.**

The ALJ found that Claimant suffered from a "severe" impairment of rheumatoid arthritis. R. 28. Claimant alleges that the ALJ misidentified his medical condition and posed an incomplete hypothetical to the VE because he suffered from sarcoidosis, which has different limitations than rheumatoid arthritis. The Court need not address the issue of the ALJ's diagnosis, however, because the hypothetical posed to the VE was based upon the limitations described in Claimant's testimony, not upon the ALJ's medical diagnosis. R. 289-91. As long as the VE took into account the proper limitations, the ALJ's diagnosis is not significant.

The ALJ posed the following hypothetical to the VE:

> [L]et me ask you to assume in a second hypothetical everything I asked you to assume in the first hypothetical . . . except in the second hypothetical, assume that the individual . . . with respect to the use of his hands would have limitations, and particularly would find it difficult to lift even ten pounds occasionally during the day and has difficulty with certain strenuous requirements that would be imposed upon the fingers of the hands, for instance unscrewing a jar top, writing long hand for perhaps, trying to do a two page letter.

R. 289. In response, the VE identified a significant number of jobs in the national economy that a person with such limitations could perform. R. 290.

Claimant asserts that the ALJ erred in failing to find that Claimant suffers from limitations in gross manipulation. The VE expressly stated, however, that Claimant could

still work as a parking lot attendant, even with problems of "gross bilateral manipulation." R. 293. Further, even if there were a minor omission or mistake in failing to find sarcoid, it should not have affected the VE's finding and would not warrant reversal. *See Shramek*, 226 F.3d at 814. The court only requires that the hypothetical question to the VE is supported by medical evidence contained in the record. *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). The hypothetical question here is supported by the record because it is based upon the limitations from Claimant's testimony. *See* R. 230-37, 267-68, 289. Because the VE's testimony establishes that a significant number of jobs in the national economy exist for someone with the set of limitations which Claimant asserted in his testimony, the ALJ did not pose an incomplete hypothetical and the finding of rheumatoid arthritis did not affect the outcome. R. 289-91.

**B.    The ALJ Properly Rejected Dr. Chang's Opinion Because it was Inconsistent With Claimant's Medical Records.**

The ALJ is only required to give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *White*, 415 F.3d at 659 (quoting 20 C.F.R. § 404.1527(d)(2)). Further, the ALJ is only required to minimally articulate his decision so that the reviewing court is able to follow his reasoning; he does not need to address each piece of evidence. *Johansen*, 314 F.3d at 287.

Here, the ALJ had substantial evidence to reject the treating physician's opinion because it was inconsistent with Claimant's testimony and the treating physician's records.

13

R. 26. Recognizing the inconsistency between Claimant's testimony and the objective medical evidence, the ALJ left the record open so that Claimant could submit additional evidence to clarify the medical issues. *See* R. 207. After the hearing, but before the record closed, Claimant submitted a RFC questionnaire completed by his treating physician, Dr. Chang. R. 25. The RFC analysis, however, only contributed to the record's inconsistencies. R. 26. Dr. Chang's post-hearing RFC opinion states that Claimant has significant limitations with reaching, handling or fingering; can grasp, turn or twist objects only three to five percent of an eight-hour workday so long as the activities are split up; cannot finely manipulate things with his hands at all; and can reach overhead for seventy-five percent of a workday so long as he does not use his hands. R. 25.

Dr. Chang's treatment records span approximately six months between May 2003 and October 2003. R. 168-92. Dr. Chang's treatment notes fail to support the extreme "stabbing" pain or functional limitations noted on the form he completed in May 2005. R. 209. Dr. Chang saw Claimant for an "initial visit" on June 9, 2003, for finger swelling over the past three years. R. 168. At that visit, Claimant reported "slight pain but not severe enough to take OTC [over-the-counter] analgesics." *Id.* One week later, on June 16, 2003, Dr. Chang saw Plaintiff a second time; Claimant reported that his "[s]ymptoms are unchanged over the last week." R. 166. He saw Dr. Chang a third time on July 14, 2003, at which time Claimant reported no new complaints. R. 159. Following his biopsy surgery in July 2003, when Claimant saw Dr. Chang on September 22, 2003, Dr. Chang reported that

14

Claimant's arthritis "appears to [be] improving slightly." R. 192. Thus, Dr. Chang's final treatment note documents improvement in a condition that Plaintiff reported caused only slight pain that was not severe enough to warrant even over-the-counter analgesics. Plainly, his extreme opinion in 2005 was not based on his own treatment notes. *See Scheck*, 357 F.3d at 702 ("[I]t is not unheard of that a personal physician might have been leaning over backwards to support the application for disability benefits.").

The ALJ found Dr. Chang's opinion inconsistent with the overall evidence in the record, and specifically, with Claimant's testimony. R. 26. This is a valid reason for rejecting the physician's opinion. *See* 20 C.F.R. § 404.1527(d)(3) (generally, the more consistent an opinion is with the record, the more weight we assign that opinion). Further, since there are no records to show that Dr. Chang examined Claimant in 2004 or 2005, his opinion warrants less deference than it would had he treated Claimant regularly for an extended period of time. *See* 20 C.F.R. § 404.1527(d)(2)(I).

In support of his finding, the ALJ identified multiple statements made by Claimant that were inconsistent with Dr. Chang's assessment. R. 26. As the ALJ noted, Dr. Chang reported that Claimant had significant limitations due to "stabbing" pain. R. 209. However, in contrast to this dire assessment, Plaintiff no longer took Prednisone for treatment of sarcoidosis and only took Tylenol for pain. R. 26. Further, Claimant could use a knife and a fork to cut meat, was able to zip his own clothing, could drive, vacuum and make his own bed, shop once or twice a week, carry groceries into the car and into his home, and had no

problems with hygiene. *Id.* This testimony plainly conflicts with Dr. Chang's assessment that Claimant could not carry things, could never use his fingers for fine manipulation, and could not use his hands for even gross lifting.

The ALJ was not required to adopt limitations suggested by a physician that were inconsistent with what even Claimant admitted he could do. *Johansen*, 314 F.3d at 287 ("[A] treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record."). Thus, the ALJ reasonably concluded that the record failed to support Dr. Chang's extreme assessment. *See Skarbek*, 390 F.3d at 503 ("A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record.").

When the opinion of the treating physician is not consistent with the record, an ALJ may rely on the opinion of other physicians. *Ellis v. Barnhart*, 384 F.Supp.2d 1195, 1202 (N.D. Ill. 2005). Here, the ALJ accepted the opinion of the state agency medical consultants that Claimant is able to perform light exertional work because it is consistent with the overall evidence of record. R. 25. The ALJ thus acted within his discretion to reject Dr. Chang's RFC report.

**C.** **Any Portions of Claimant's Testimony Which the ALJ Rejected Were Minor Omissions and Do Not Warrant Reversal.**

Finally, Claimant argues that the ALJ does not fully credit his testimony. This Court must give the ALJ's credibility assessment special deference because "the ALJ is in the best

16

position to see and hear the witness and determine credibility." *Shramek*, 226 F.3d at 811. The ALJ must also articulate specific reasons for accepting or rejecting one's credibility. *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007). Here, the ALJ sufficiently explained that he only gave partial credit to the Claimant's testimony because of "inconsistencies with the objective medical evidence showing that although he has some mild functional limitation of the bilateral fingers, the limitations do not preclude the performance of at least light exertional level work." R. 26.

The ALJ only discredited Claimant's testimony to the extent that Claimant asserted he was unable to perform light work. R. 26. The decision still recognizes that there is possible evidence of sarcoid and acknowledges Claimant's other symptoms including bilateral manipulative limitations and difficulty unscrewing a bottle cap or writing more than two pages. R. 25-26. Any other portions of Claimant's testimony that the ALJ did not credit were merely omissions of minor physical limitations. Such omissions do not warrant reversal because a reasonable trier of fact could not have come to a different conclusion if they were included. *See Shramek*, 226 F.3d at 814. Thus, even if the ALJ had accepted Claimant's asserted limitations in full, a finding of not disabled would still be justified.

## IV. CONCLUSION

The ALJ posed a complete hypothetical to the VE because it was based on the limitations Claimant described in his testimony. Whether the ALJ misidentified the Claimant's medical condition is thus insignificant because the VE's assessment was based

17

upon an accurate description of his limitations, not upon the ALJ's diagnosis. Further, the ALJ only discredited Claimant's testimony to the extent it differed from the opinion of the state agency medical consultants that he is able to perform light work. Finally, the ALJ was justified in rejecting the opinion of the treating physician because it was inconsistent with the Claimant's testimony and the treating physician's medical records. **For the reasons set forth in this opinion, Claimant's motion for judgment on the pleadings is denied and the Commissioner's disability decision is affirmed.**

**SO ORDERED THIS 2nd DAY OF OCTOBER, 2007.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies Sent to:**

M. Jacqueline Walther
Kielian & Walther
33 W. Jackson, Ste. 201
Chicago, IL 60604

Counsel for Plaintiff

Samuel B. Cole
Assistant United States Attorney
219 S. Dearborn
Chicago, IL 60604

Curt P. Marceille
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, IL 60606

Counsel for Defendant